## 66321. GRAVES v. THE STATE.

BIRDSONG, Judge.

Joe Allen Graves was convicted of armed robbery and theft of an auto. He was sentenced to life for the robbery and ten years for theft to run concurrently with the robbery sentence. Graves brings this appeal enumerating twelve alleged errors. *Held:*

1. The pertinent facts giving rise to this case show that Graves and another determined to burglarize the home of a doctor and her husband. The two defendants were seen in the vicinity of the home all during the day of the robbery and appellant Graves was recognized by two workmen working close by as being a person with whom they had gone to school. As the two robbers began to break into the home (they had waited until a domestic servant had departed for the day), the husband returned home from his place of employment. The husband was forcibly restrained, tied up and forced to reveal at knife point the location of a floor safe. Appellant and his companion then removed from the safe silver bars, gold coins, jewelry and other valuables amounting in value to over $80,000. As they began to depart, intending to take the husband with them (to dispose of him in a nearby river), the doctor-wife returned home in her car. She likewise was forcibly restrained and tied up by the robbers. Apparently one long-bladed knife was used to subdue each of the two victims. The wife received bruises from being "thrown around" and a slight cut on her chest from the knife. The husband, other than being threatened

with the knife and shoved about, was otherwise unharmed.

As the two men departed, leaving the two victims tied up in separate rooms in the house, they found the doctor's purse and car keys where she had left them in the carport outside the house. They took the purse and keys and drove away in the car. Approximately two weeks later, an Arizona state patrolman observed a car being driven slowly (30 to 35 mph) in a 55 mph highway zone. The car seemed to be operated in a slightly erratic manner, weaving slightly within the lane. The trooper stopped the car for suspicion of DUI. He detected no odor of alcohol but observed the driver's eyes seemed glazed as if he were under some form of drug. The driver ultimately was identified to be one of the robbers, with the other (appellant) asleep on the back seat. The driver convinced the trooper he was simply tired and needed sleep. Because of the unusual circumstances, the trooper put the driver's name and license through the National Crime Information Center (NCIC) but allowed the car to proceed to the next exit with instructions for the driver to pull over and take a nap before proceeding. Pending a reply to the NCIC check, the trooper followed the car to the exit. The NCIC check established that both the driver and sleeping passenger were wanted on felony warrants (armed robbery and car theft) in Georgia. Both defendants were then arrested. A search of the car disclosed a large sum of money ($12,000-$13,000) in a box and numerous items of jewelry and personal identification papers of the two robbery victims.

2. Because the robbery was reported in the county newspaper (a factual and impartial reporting of the incident), appellant moved for a change of venue based upon prejudicial pretrial publicity. Other than the existence of the two newspaper articles and the extent of their publication and dissemination, appellant offered no evidence as to the impact of the publications upon the jurors who tried the case or upon the community as a whole. This subject was not pursued in the voir dire preserved for us in the transcript.

The test as to whether newspaper publicity has so prejudiced a case that an accused cannot receive a fair trial is whether the jurors summoned to try the case have formed fixed opinions as to guilt or innocence of the accused from reading such newspaper articles. *Krist v. Caldwell,* 230 Ga. 536, 537 (198 SE2d 161), overruled on other grounds, *Burney v. State,* 244 Ga. 33, 37 (257 SE2d 543). The newspaper articles, as we view them were merely factual and not inflammatory. Graves has failed to produce evidence that the members of the traverse jury have fixed opinions as to his guilt based upon those articles. There was no error in denying a change of venue. *Mooney v. State,* 243 Ga. 373, 385 (254 SE2d 337); *Heard v. State,* 141 Ga. App. 666, 669 (234 SE2d 83).

3. Appellant argues that the arrest and search of the car by the Arizona trooper was without probable cause and, in the absence of a warrant, the fruits of that arrest were subject to suppression. We disagree. The arresting officer had adequate reason to stop the car, obtain the license of the operator during that momentary detention, and verify that the operator was not drunk or under the influence of intoxicants. The subsequently obtained information through the NCIC that the operator was wanted for a felony warrant, justified the arrest and subsequent search of the vehicle. See *Morgan v. State,* 241 Ga. 485, 487 (246 SE2d 198); *Carson v. State,* 241 Ga. 622, 623 (247 SE2d 68); *Glover v. State,* 139 Ga. App. 162 (2) (227 SE2d 921). This enumeration is without merit.

4. In enumerations 3, 4 and 5, Graves in effect argues that each of three witnesses who testified at trial (or at a revocation of probation hearing) and there identified the appellant as one of the robbers, testified as the result of an irreparably suggestive misidentification. Each of these witnesses had previously seen pictures of the defendants in a photographic display, admittedly without suggestion by the police officers showing the pictures. At the revocation proceedings, Graves was the only person present and, thus, the only one who could have been identified by one of the victims. Each witness was carefully questioned and each un-equivocally based the identification upon the adequate exposure of the appellant to the witness on the day of the robbery. We have no hesitancy in concluding that there was an independent and lawful source and support for each identification and there was no substantial chance of misidentification. *Heyward v. State,* 236 Ga. 526 (224 SE2d 383); *Talley v. State,* 137 Ga. App. 548, 551 (224 SE2d 455). See also *Payne v. State,* 233 Ga. 294, 299 (210 SE2d 775). We find no error.

5. Graves next argues that the trial court erred in sentencing him upon the conviction for theft contending that the theft was a part and parcel of the armed robbery. The facts simply do not support this contention. The facts show that the armed robbery was wholly completed and the victims were both inside the house immobilized. After the robbers had left the house with the loot taken from the presence of the victims in their possession, they found the doctor's purse and car keys outside the house. They then drove away in the car, effecting the theft of the car totally after the armed robbery had been completed and outside the presence of the victims. See *Jones v. State,* 161 Ga. App. 620 (1) (288 SE2d 795).

6. Graves argues that a letter written by him to his co-accused while they were incarcerated was inadmissible because there was no showing that the co-accused was qualified to identify the

handwriting. Once again the facts totally belie the contention. The witness testified that he had seen Graves' handwriting on many occasions and recognized the letter as having been written by Graves. It is clear that a non-expert witness may identify handwriting if he knows the handwriting or is so familiar with it that he can and does recognize it. *Copeland v. State,* 66 Ga. App. 142 (4) (17 SE2d 288). An adequate foundation was laid for this relevant evidence.

7. Graves complains the trial court erred in admitting into evidence photographs of three knives by contending that none of the three was the knife used in the robbery and thus all were irrelevant and prejudicial. These knives were found in the possession of the defendants at the time of their arrest in Arizona. Even if we assume that no one of the knives was the one used in the robbery (an assumption that may not be wholly warranted), the knives at the least represented purchases made and thus represented some of the ill-gotten proceeds of the robbery and tended to explain the absence of the full amount of the money stolen, as did a photo album, a camera, an automobile, and the like. Furthermore, it long has been the law of this state that all the circumstances connected with the arrest of an accused are admissible and may be weighed by the jury "for what they are worth." *Wooten v. State,* 224 Ga.106 (5) (160 SE2d 403); *Strickland v. State,* 137 Ga. App. 419, 422 (224 SE2d 87). This same answer is applicable to the objection raised in enumeration 9 complaining of photographs taken from an album found in the possession of the defendants at the time of their arrest and procured with funds arising out of the robbery.

8. Appellant argues the court erred in refusing to give a requested charge on theft by receiving stolen property. We reject this contention. There was no credible evidence that appellant was simply the recipient of stolen property. If there is no evidence giving rise to a lesser included offense, the trial court does not err in failing to give such a charge. *Adams v. State,* 236 Ga. 468, 470 (224 SE2d 32); *Nuckles v. State,* 137 Ga. App. 200, 204 (223 SE2d 245).

9. Graves further urges error in the court's charge on credibility of witnesses wherein it stated in effect that if there was evidence in irreconcilable conflict, perjury should not be imputed thereto but the jurors should accept the evidence most credible and acceptable to them. Graves argues this required the jurors to accept some of the state's evidence even if they found it in irreconcilable conflict, thus lessening the burden the state must meet. We find this argument more suited to its ingenuity than to its merit. This charge simply caused the jurors to weigh the evidence and accept only that which was the most acceptable, where they had a choice to make because one version could not be true. This is consistent with the common

experience of men and shifts no burden nor lessens any of its requirements.

10. In his last enumeration of error, appellant submits that an affidavit by one of his witnesses to the effect that she saw a conversation between two of the state's witnesses after the rule of sequestration had been invoked, even without a further showing of prejudice, necessitated the trial court to grant a hearing on the nature of that conversation prior to the imposition of sentence and the refusal to grant such a hearing resulted in lack of due process. We find no prejudice in this alleged occurrence, nor in the action of the trial court declining to hold such a hearing. Disobedience of a sequestration order may subject the offender to punishment for contempt or may affect his credit, but does not render the witness incompetent to testify, or disqualify his testimony. *Watts v. State,* 239 Ga. 725, 731 (238 SE2d 894); *McFarland v. State,* 137 Ga. App. 354 (223 SE2d 739). Moreover, even assuming error, we are satisfied on the basis of the evidence in this record that it is highly probable that such error would not, indeed could not, have contributed to the judgment. *Johnson v. State,* 238 Ga. 59, 61 (230 SE2d 869).

*Judgment affirmed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED JUNE 30, 1983.

*James D. Clark,* for appellant.

*Harry D. Dixon, Jr., District Attorney, Richard E. Currie, Assistant District Attorney,* for appellee.