A96A1606. THE STATE v. DIAMOND.
(477 SE2d 320)

POPE, Presiding Judge.

The State appeals the trial court's grant of Jacqueline Diamond's motion to suppress. At the suppression hearing, only the testimony of the arresting officer, Officer Cheryl Davis of the Cobb County Police Department, was presented. She testified that on February 25, 1995, at about 3:30 a.m., she observed a vehicle driving north in front of

her patrol car. Davis recalled that the vehicle seemed to have difficulty staying in its lane of travel and at one point it "straddled the line dividers between the two northbound lanes." After seeing the vehicle's difficulty maintaining its lane, Davis activated her video camera. The vehicle then put on its right turn signal and turned right onto Little Willeo Road. Davis observed the vehicle entering a curve, at which point the vehicle's left turn signal was again activated, although Davis testified there was no street to turn onto. Davis stated that the driver turned off the blinker after the curve. Because Davis suspected that the driver of the vehicle was driving under the influence of alcohol, she decided to stop the vehicle and activated the blue lights of the police vehicle.

Davis recalled that the vehicle, which Diamond was driving, pulled off the road into someone's yard and stopped "almost abruptly." After Diamond failed several field sobriety tests, Davis placed her under arrest and read her the implied consent card. Subsequent breath and blood tests revealed that Diamond's blood alcohol level exceeded the legal limit.

On cross-examination, Diamond's attorney asked Davis to review the videotape of the events outside of the court's presence. (The court never viewed the videotape of the events.) Davis had previously testified that she had viewed the videotape — though not recently — and that it did not show what she remembered. She had stated that the discrepancy might be attributable to the different vantage point of the video camera. After reviewing the video, Davis stated that her reason for activating the camera was not recorded and that it was difficult to see certain aspects of Diamond's driving that Davis recalled.

After reviewing the video, Davis testified for the first time that there were construction barrels on both sides of the road that night. Nevertheless, Davis stated that the barrels were about a foot off the road and did not play a role in Diamond's driving. With her recollection refreshed, Davis recalled that when Diamond moved from the left northbound lane into the right lane, she had activated her right turn signal. Davis recalled that Diamond kept the right turn signal activated for a quarter of a mile, until she turned right onto Little Willeo Road, and that it was unusual for a driver to leave a blinker on for that distance.

Davis reiterated that her decision to stop Diamond was based on Diamond's inability to stay completely within her lane, the fact that Diamond was *still* driving on top of the lane dividers, and the fact that Diamond used her left turn blinker while driving on Little Willeo Road to indicate a non-existent turn. Davis, who testified that her training included detection of DUIs, said that she stopped Diamond to ascertain whether she was a safe driver and to assure that she

would not pose a hazard to others. Davis issued Diamond citations for failure to maintain her lane of travel, for no proof of insurance, and for driving under the influence.

The court granted the motion to suppress, based on its finding that Davis did not have an articulable suspicion upon which to stop Diamond's vehicle. In its factual findings, the court stated: "there was no indication that there was any straddling of any line when the officer testified after reviewing the videotape. The fact that the initial testimony of the officer indicated that the vehicle was straddling was never restated by the officer after refreshing her memory by reviewing the video tape, either on cross examination or on re-direct by the State. Therefore it does not appear to this Court that there was a straddling of the line, except when there was a legal change of lanes from left to right."

Here, in its sole enumeration of error, the State argues that the trial court improperly granted the motion because Davis had sufficient articulable suspicion for the stop and the court's findings of facts were clearly erroneous. We agree and reverse.

"When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them." (Citations and punctuation omitted.) *Allenbrand v. State*, 217 Ga. App. 609 (1) (458 SE2d 382) (1995). The court's conclusion that there was no evidence after Davis reviewed the videotape that Diamond's vehicle was straddling the lane was clearly erroneous. First, Davis had previously testified that she turned on the videotape only *after* observing Diamond's vehicle straddle the lanes. Moreover, after reviewing the videotape, Davis reiterated that Diamond was *still* driving on top of the lane dividers.

"An officer may conduct a brief investigatory stop of a vehicle if such stop is justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. The specific articulable suspicion must be based on the totality of the circumstances — objective observations, known patterns of certain kinds of lawbreakers, and inferences drawn and deductions made by trained law enforcement personnel." (Citations and punctuation omitted.) *State v. Whitfield*, 219 Ga. App. 5, 6 (463 SE2d 728) (1995).

This Court has specifically determined that an officer's observation of a motorist's "weaving" may serve as sufficient reason to warrant an investigative stop for a possible DUI violation. *State v. Whitfield*, 219 Ga. App. at 7; *Pupo v. State*, 187 Ga. App. 765, 766 (1) (371

SE2d 219) (1988).[1] Given Davis's testimony that Diamond was unable to stay in her lane, combined with the testimony of Diamond's unusual — though not illegal — behavior of signaling for a non-existent turn, we are unable to conclude that the investigative stop lacked a reasonable, articulable basis for the suspicion that Diamond might be under the influence of alcohol. See generally *State v. Adams*, 186 Ga. App. 87 (366 SE2d 326) (1988); compare *State v. Goodman*, 220 Ga. App. 169, 170 (2) (469 SE2d 327) (1996).

*Judgment reversed. Andrews and Smith, JJ., concur.*

DECIDED SEPTEMBER 19, 1996 —
RECONSIDERATION DENIED OCTOBER 11, 1996 —

*Benjamin F. Smith, Jr., Solicitor, Rebecca A. Hulsey, Assistant Solicitor*, for appellant.

*Green & Associates, Patrick H. Head*, for appellee.

---

[1] In the context of "pretextual" stops of motorists, see *Whren v. United States*, 517 U. S. ___ (116 SC 1769, 135 LE2d 89) (1996).