## A98A1557. SEMICH v. THE STATE.
(506 SE2d 216)

BEASLEY, Judge.

With the blue lights atop their nearby patrol car flashing, Officers Johnson and Wright directed traffic around a damaged utility pole at 1:30 in the morning. Officer Wright observed an approaching vehicle abruptly turn left into a residential driveway, back out, and proceed in the opposite direction. He called Officer Johnson's attention to the car, and both officers saw it weave within its lane. Suspecting intoxication, they followed in their car and saw the vehicle again weave within its lane after making a left turn. They pulled it over to investigate.

Nicholas Semich, the driver, failed a series of field sobriety tests and registered an alcohol concentration of .151 grams. He was convicted of driving under the influence of alcohol (OCGA § 40-6-391 (a)). On appeal he challenges the denial of his motion in limine to exclude the officers' testimony as arising from a stop which violated the federal constitution.

"When a police officer makes a stop and restrains an individual's freedom to depart, that person is seized. The Fourth Amendment

---

requires that the seizure be reasonable to assure the individual is not subject to the discretion of the official in the field. The reasonableness requirement imposed by the Fourth Amendment strikes a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.

"A brief investigative stop of a vehicle by a law enforcement officer is considered reasonable if it is justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. Investigative stops of vehicles, like other *Terry*-type stops, are illegal if based only on an unparticularized suspicion or hunch. There must be a specific, articulable suspicion which is determined by looking at the totality of the circumstances — objective observations, information from police reports, the modes or patterns of certain kinds of lawbreakers, and the inferences drawn and deductions made by a trained law enforcement officer."[1]

"When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it.

"Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment."[2]

(a) *Failure to signal.* The parties dwell on Officer Wright's testimony that Semich did not signal his left turn into the driveway. If Semich's failure to signal constituted a traffic offense, the stop was clearly authorized.[3] Under OCGA § 40-6-123, no turn signal is required where there are no other moving vehicles in the vicinity.[4] Officer Wright, the only witness to the turn, testified no vehicles were present. Also, weaving within one's own lane generally does not

---

[1] (Citations and punctuation omitted.) *State v. Armstrong*, 223 Ga. App. 350, 351 (2) (477 SE2d 635) (1996); see *United States v. Cortez*, 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981).

[2] (Citation, punctuation, and emphasis omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[3] *Whren v. United States*, 517 U. S. 806, 810 (116 SC 1769, 135 LE2d 89) (1996) (" '[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred' ") (citations omitted); *State v. Bowen*, 231 Ga. App. 95, 96 (498 SE2d 570) (1998); *Dooley v. State*, 221 Ga. App. 245 (1) (470 SE2d 803) (1996).

[4] *State v. Goodman*, 220 Ga. App. 169, 171 (2) (469 SE2d 327) (1996); *State v. Jones*, 214 Ga. App. 593, 594 (448 SE2d 496) (1994).

constitute a traffic offense.[5] No traffic violation occurred.

The issue is whether abruptly turning around at 1:30 a.m. in an apparent effort to avoid visible police, plus weaving within one's lane, gives police sufficient reason to conduct an investigatory stop, even though these actions do not themselves constitute a traffic offense.

(b) *Weaving within lane and furtive conduct.* In denying the motion in limine, the court necessarily found these actions justified a reasonable suspicion that Semich was engaged in criminal conduct. *Gabiddon v. State,*[6] which held that weaving within one's own lane justified a stop, is not determinative because it also involved a traffic violation of impeding the flow of traffic.[7] Numerous cases have held that weaving out of one's lane justifies a stop,[8] but such also constitutes a traffic violation.[9] Most of these cases focus on the weaving not as a traffic offense but as an indication that the driver was possibly intoxicated, which in this context authorized police to stop the driver to determine if the suspicion, a reasonable one, was accurate. "This Court has specifically determined that an officer's observation of a motorist's 'weaving' may serve as sufficient reason to warrant an investigative stop for a possible DUI violation."[10]

Thus the behavior giving rise to the reasonable suspicion need not be a violation of the law. *Roberson v. State*[11] held that even if the defendant's actions "did not amount to a per se traffic violation, under the totality of the circumstances . . . [the officer] had a reasonable, articulable suspicion that [the defendant] was committing a

---

[5] See OCGA § 40-6-48 (1).

[6] 184 Ga. App. 475, 476 (2) (361 SE2d 861) (1987).

[7] See also *Graves v. State,* 167 Ga. App. 246, 248 (3) (305 SE2d 913) (1983) (car weaving in own lane and going 35 mph in 55 mph zone justifies stop).

[8] *Bowen,* supra, 231 Ga. App. at 96 (veering into curb lane); *State v. Diamond,* 223 Ga. App. 164, 166 (477 SE2d 320) (1996) (straddling lanes); *Strickland v. State,* 221 Ga. App. 120, 122 (2) (470 SE2d 508) (1996) (weaving badly over the roadway); *State v. Whitfield,* 219 Ga. App. 5, 6 (463 SE2d 728) (1995) (weaving over the fog line); *Allenbrand v. State,* 217 Ga. App. 609 (458 SE2d 382) (1995) (weaving onto the center line); *Smith v. State,* 216 Ga. App. 453 (454 SE2d 635) (1995) (swerving into different lanes); *Huff v. State,* 205 Ga. App. 557 (422 SE2d 664) (1992) (weaving across lines); *Ramirez v. State,* 192 Ga. App. 255 (384 SE2d 279) (1989) (drifting over into emergency lane); *Pupo v. State,* 187 Ga. App. 765 (1) (371 SE2d 219) (1988) (weaving into emergency lane).

[9] OCGA § 40-6-48 (1).

[10] *Diamond,* supra, 223 Ga. App. at 166 (citations omitted); see *Strickland,* supra, 221 Ga. App. at 121 (weaving made officer suspicious of DUI); *Whitfield,* supra, 219 Ga. App. at 6 (erratic driving indicated DUI); *Ramirez,* supra, 192 Ga. App. at 256 (weaving indicated intoxication or unsafe vehicle); *Graves,* supra, 167 Ga. App. at 248 (3) (weaving and slow speed may reflect intoxication). Compare *Raulerson v. State,* 223 Ga. App. 556, 557 (2) (479 SE2d 386) (1996) (stop improper because officer "did not observe defendant weave in the highway . . . or otherwise demonstrate that she was intoxicated"); *Goodman v. State,* 220 Ga. App. 169, 172 (2) (469 SE2d 327) (1996) (stop improper because officer did not testify defendant "executed the turn in a manner demonstrating that he was intoxicated").

[11] 230 Ga. App. 179, 181 (495 SE2d 643) (1998).

traffic offense."[12] Analogous is *Atkins v. State*,[13] in which the officer saw the defendant walk unsteadily across a parking lot and then get in a car and drive away. *Atkins* held that even though walking unsteadily is not a crime, it can give rise to an articulable suspicion that the defendant was intoxicated and should not be driving.

A 1980 case intimated that weaving within a lane was insufficient to justify a stop.[14] But since then the law has become increasingly more stringent by gradually lessening the degree of intoxication tolerated for drivers and thus criminalizing more behavior under OCGA § 40-6-391.

In 1983 it became illegal per se to drive with an alcohol concentration of .12 grams.[15] In 1988 this per se illegality attached to having .12 grams alcohol concentration within three hours of driving.[16] In 1991 it was moved down to .10 grams for all drivers excepting those under 18, for whom it was moved down to .06.[17] In 1994 the under-18 limit was moved down to .04,[18] and in 1997 it was dropped to .02 and included those under 21.[19]

The smaller amounts of alcohol ingestion are behaviorally manifested by smaller deviations from the norm. Thus less pronounced deviations which can result from lesser alcohol influence can raise a reasonable suspicion of violation. As a result, the police can stop drivers who engage in erratic driving behavior, even if it is simply weaving within a lane. Semich displayed not only two instances of weaving within a lane, but also the furtive conduct of abruptly changing his course of travel as though to avoid encountering police, who were visibly present.[20] Another fact was the late hour, a time when drunk

---

[12] See also *Castillo v. State*, 232 Ga. App. 354, 357 (502 SE2d 261) (1998) ("regardless of whether Castillo's act of making a sudden and abrupt change in speed and a quick and unsafe turn and backing maneuver near the crest of a hill was a traffic violation, it was nevertheless a sufficiently suspicious and deliberately furtive response to the road check so as to give the trooper at least a reasonable suspicion of Castillo's criminal activity and to warrant further investigation") (citation omitted); *Armstrong*, supra, 223 Ga. App. at 351 ("[e]ven if Armstrong's behavior did not technically violate the 'laying drags' statute, the officer nonetheless had reasonable articulable suspicion to stop him"); *Allenbrand*, supra, 217 Ga. App. at 610 (1) ("Allenbrand's eventual acquittal on the charge of failure to maintain lane is equally irrelevant in considering whether the officer had probable cause to stop Allenbrand at the time he observed his vehicle weaving within his lane and eventually crossing the line").

[13] 209 Ga. App. 70 (432 SE2d 661) (1993).

[14] *Mulling v. State*, 156 Ga. App. 404 (1) (274 SE2d 770) (1980).

[15] Ga. L. 1983, pp. 1000, 1015-1016, § 12.

[16] Ga. L. 1988, pp. 1893, 1895, § 2.

[17] Ga. L. 1991, pp. 1886, 1891, 1893, §§ 6, 8.

[18] Ga. L. 1994, pp. 1600, 1615, § 8.

[19] Ga. L. 1997, pp. 760, 793, § 23.

[20] See *Castillo v. State*, supra at 357 ("[d]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea*") (citation and punctuation omitted).

driving is more common than during the day. Although turning around to avoid police is not alone sufficient to justify a stop,[21] combined with weaving and the late hour it is.[22]

The officers had reasonable and articulable grounds to suspect Semich was engaging in criminal conduct. Denial of the motion in limine was not error.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 21, 1998 — 

*J. Robert Daniel*, for appellant.

*Otis L. Scarbary, Solicitor, Russell B. Mabrey, Jr., Assistant Solicitor*, for appellee.

---

[21] See *State v. Jones*, 214 Ga. App. 593, 594 (448 SE2d 496) (1994).

[22] See *Graves*, supra, 167 Ga. App. at 248 (2) (driving slow and weaving within lane suffices); see also *Edwards v. State*, 219 Ga. App. 239, 244 (3) (464 SE2d 851) (1995) (late hour was factor in giving rise to DUI suspicion); *State v. Slater*, 207 Ga. App. 669, 670 (428 SE2d 676) (1993) (same).