A05A0750. VEAL v. THE STATE.
(614 SE2d 143)

MIKELL, Judge.

Minnon W. Veal was charged by accusation with two counts of driving under the influence of alcohol (DUI). After the trial court denied his motion to suppress/motion in limine, Veal agreed to a bench trial while reserving his right to appeal the denial of his motion. The trial court found him guilty of both DUI counts, but merged them for sentencing purposes. Veal appeals from the order denying his motion for new trial, arguing that the trial court erred in admitting the results of field sobriety tests and the state-administered breath test because the arresting officer did not possess a reasonable articulable suspicion for the stop of his vehicle. We disagree and affirm.

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court

should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

So viewed, the evidence adduced at the hearing on the motion to suppress/motion in limine shows that at 7:30 p.m. on December 11, 2002, Crisp County Sheriff's Deputy Robert Michael Sangster, Jr., was traveling east on Highway 280 when he noticed a vehicle driving very slowly. Sangster activated his radar unit and recorded the vehicle's speed at 25 mph. He testified that the posted speed limit on the highway is 55 mph. After Sangster passed the vehicle, he turned around and followed it. The driver turned onto Williford Crossing.

According to Sangster, the vehicle was weaving within its lane on Williford Crossing, so the deputy initiated a traffic stop. As he walked up to the driver's door, Sangster detected an odor of alcohol. When Veal exited the vehicle, Sangster noted that his speech was slurred, his eyes were glassy, and he was unsteady on his feet. Sangster asked Veal whether he had been drinking, and Veal replied that he had drunk two or three beers. Sangster then administered field sobriety tests. Veal failed the horizontal gaze nystagmus test, and he swayed and lost his balance while trying to perform the heel-to-toe test and the one-leg stand. Also, Veal could not recite the alphabet properly. Finally, Veal refused to take the Alcosensor test. Sangster testified that the manifestations he observed that evening were consistent with someone who was under the influence of alcohol. Further, based on his knowledge, training, and experience, Sangster determined that Veal was under the influence of alcohol to the extent that he was a less safe driver.

Sangster then placed Veal under arrest, read him the implied consent warnings, and transported him to the sheriff's office, where Veal underwent a breath test. Corporal Al Smith performed the test

---

[1] (Punctuation and footnote omitted.) *Semich v. State*, 234 Ga. App. 89, 90 (506 SE2d 216) (1998).

on the Intoxilyzer 5000. He obtained two breath samples from Veal; the results were 0.157 and 0.146.

A videotape of the stop was introduced into evidence. Sangster testified that he activated the video camera prior to turning on his blue lights in order to record Veal's vehicle weaving. On cross-examination, Sangster testified that parts of the road on which the weaving occurred did not have any white lines, and that the videotape depicted Veal's vehicle "hitting where the white line would be." According to Sangster, he did not observe the vehicle weaving prior to turning on his video camera.

In denying the motion to suppress/motion in limine, the trial court found that Veal was traveling 25 mph in a 55-mph zone and was weaving within his lane. The court concluded that the combination of those factors gave rise to an articulable suspicion that the driver was under the influence of alcohol. On appeal, Veal claims that the stop of his vehicle was not justified because neither driving 30 mph below the posted speed limit nor weaving within one's own lane is illegal. Finally, he contends that there is no evidence to support a finding that he was weaving. We disagree.

> An officer may conduct a brief investigatory stop of a vehicle if such stop is justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. The specific articulable suspicion must be based on the totality of the circumstances — objective observations, known patterns of certain kinds of lawbreakers, and inferences drawn and deductions made by trained law enforcement personnel.[2]

It is well established that weaving, both out of one's lane and within one's own lane, particularly when combined with other factors, may give rise to reasonable articulable suspicion on the part of a trained law enforcement officer that the driver is violating the DUI laws.[3] The conduct forming the basis of the reasonable suspicion need not be a violation of the law.[4]

> Numerous cases have held that weaving out of one's lane justifies a stop. Most of these cases focus on the weaving not as a traffic offense but as an indication that the driver was possibly intoxicated, which in this context authorized police

---

[2] (Citation and punctuation omitted.) *State v. Diamond*, 223 Ga. App. 164, 166 (477 SE2d 320) (1996).

[3] See *Semich*, supra at 91 (b), and cases cited therein.

[4] Id.

to stop the driver to determine if the suspicion, a reasonable one, was accurate. This Court has specifically determined that an officer's observation of a motorist's "weaving" may serve as sufficient reason to warrant an investigative stop for a possible DUI violation. Thus the behavior giving rise to the reasonable suspicion need not be a violation of the law. The police can stop drivers who engage in erratic driving behavior, even if it is simply weaving within a lane.[5]

In the case at bar, the stop was justified by Veal's weaving within his lane and traveling 30 mph below the posted speed limit.[6] Contrary to Veal's argument, *Raulerson v. State*[7] does not warrant a different result. In *Raulerson*, the defendant was stopped for driving 25 or 30 mph in a 55-mph zone. We held that the officer did not have a reasonable suspicion of criminal conduct because he "did not observe defendant weave in the highway . . . or otherwise demonstrate that she was intoxicated."[8] In this case, the defendant was weaving within his lane. Therefore, *Raulerson* is distinguishable.

In addition, Veal contends that no evidence supports the trial court's factual finding that he was weaving. Veal argues that the videotape does not depict him "weaving" and contradicts the officer's testimony. This argument fails because the videotape mirrors the deputy's testimony. It shows Veal's truck drifting over to the shoulder, "hitting where the white line would be." Whether or not such conduct constitutes weaving is a fact for the lower court to find from the testimony of a trained law enforcement officer. On appeal from the denial of a motion to suppress, the evidence is construed most favorably to the upholding of the trial court's findings and judgment, and the court's findings of fact may not be disturbed if there is any evidence to support them.[9] As there is evidence to support the court's finding that Veal was weaving, the judgment is affirmed.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

---

[5] (Punctuation and footnote omitted.) *Davis v. State*, 236 Ga. App. 32, 33 (1) (510 SE2d 889) (1999). Accord *Johnson v. State*, 251 Ga. App. 659, 661 (3) (555 SE2d 34) (2001) (turning around to avoid police checkpoint at 1:45 a.m. combined with weaving within lane justified stop); *Semich*, supra at 93 (b) (same); *Diamond*, supra (grant of motion to suppress reversed; defendant straddled lane line and signaled a nonexistent turn); *Graves v. State*, 167 Ga. App. 246, 248 (3) (305 SE2d 913) (1983) (car weaving slightly within lane and going 35 mph in 55-mph zone justified stop).

[6] See *Graves*, supra.

[7] 223 Ga. App. 556 (479 SE2d 386) (1996).

[8] Id. at 557 (2).

[9] *Semich*, supra at 90.

DECIDED APRIL 19, 2005.

*Wright, Hyman & Pack, George R. Wright*, for appellant.
*Denise D. Fachini, District Attorney, Jana M. Bruner, Assistant District Attorney*, for appellee.