A08A0784. CAMACHO v. THE STATE.
(663 SE2d 364)

MIKELL, Judge.

Juan Camacho was charged by accusation with driving under the influence (DUI) of alcohol to the extent he was a less safe driver, DUI per se, and failure to maintain lane. Camacho filed a motion to suppress/motion in limine, challenging the lawfulness of the stop. After the trial court denied his motion, Camacho agreed to a bench trial, stipulating to the findings of facts in the court's order denying the motion to suppress and all facts adduced at the motions hearing. Camacho offered no additional evidence during the bench trial. Camacho was convicted of the DUI offenses, which were merged, and failure to maintain lane and was sentenced to twelve months, with one day to serve in confinement[1] and the remainder of the sentence probated. On appeal, Camacho argues that the trial court erred in denying his motion to suppress and challenges the sufficiency of the evidence that resulted in his conviction for failure to maintain lane. We affirm.

1. In his first enumerated error, Camacho argues that the trial court erroneously denied his motion to suppress because the stop was illegal. In reviewing the trial court's order on Camacho's motion to suppress evidence, we are guided by three principles with regard to our interpretation of the trial court's judgment of the facts in the case:

---

[1] Camacho was given credit for time served.

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[2]

In this case, the state and Camacho stipulated to the following facts as set forth in the trial court's order:

At around four o'clock in the morning on September 19, 2006[,] Forsyth County Sheriff's Deputy Heagerty was traveling north on Highway 141 approaching the Northbound exit ramp from Highway 400, where he noticed a car hit a large pothole on the exit ramp where it merges with 141. Heagerty turned his patrol car around [and] stopped the car, which was being driven by the Defendant. After a roadside investigation[,] the Defendant was arrested for DUI. Heagerty testified that the sole reason for the stop was that, by hitting the pothole the Defendant was violating OCGA § 40-6-48 (1). According to Heagerty[,] the pothole was off of the roadway "a pretty good distance" such that a car could not hit it if it were entirely within its lane. On cross-examination[,] Heagerty admitted after viewing photographs of the exit ramp (Exhibits D1-D4) that the pothole was not as far from the roadway as he remembered it. That part of the exit ramp appears poorly maintained, and there is no visible fog line on that side of the roadway.

Heagerty, the sole witness at the motion to suppress hearing, also testified that he frequently traveled the road where he encountered Camacho; that the pothole had been there for at least one year; that even though the fog line faded as you approached the pothole, a reasonable person could see where the line faded and where it should be and, therefore, would not hit the pothole if driving on the roadway; that it was impossible for a driver who drove only in his lane of travel to hit the pothole; that Camacho did not hit the edge of the pothole but drove through it; and that this was the first time that he ever saw someone hit the pothole.

---

[2] (Footnote omitted.) *Veal v. State*, 273 Ga. App. 47-48 (614 SE2d 143) (2005).

OCGA § 40-6-48 (1) provides that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety[,]"[3] and "[n]umerous cases have held that weaving out of one's lane justifies a stop."[4] In this case, Camacho weaved out of his lane when he drove into the pothole, which violated this statute. It is well established that "[a]n officer may conduct a brief investigatory stop of a vehicle if such stop is justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct."[5]

In denying Camacho's motion, the trial court stated that it was not clear that a criminal violation had occurred but reasoned that Heagerty was acting in good faith when he stopped Camacho. The court found Heagerty credible, particularly when he testified that the pothole was closer to the street than he remembered. The court concluded that Heagerty's error, coupled with his testimony that he had never seen a car hit the pothole, would lead to a reasonable conclusion that Camacho had driven significantly out of the roadway.

Based upon Heagerty's testimony that Camacho weaved out of his lane of traffic when he hit the pothole, we agree with the trial court that the stop was authorized. We also note that even where an officer's honest belief that a traffic violation has actually occurred proves to be incorrect, the officer's "mistaken-but-honest belief may nevertheless demonstrate the existence of 'at least an articulable suspicion and reasonable grounds for the stop.' "[6] In that situation, we must then decide "whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing."[7] In the instant case, we agree with the trial court's findings that the officer's decision to stop Camacho was made in good faith and was not unreasonable or harassing. Accordingly, the trial court's denial of Camacho's motion to suppress was appropriate.

2. Camacho also argues that the trial court erred in finding him guilty of failure to maintain lane, relying primarily on the trial

---

[3] See also *Viau v. State*, 260 Ga. App. 96, 98 (1) (c) (579 SE2d 52) (2003).

[4] (Punctuation omitted.) *Davis v. State*, 236 Ga. App. 32, 33 (1) (510 SE2d 889) (1999), citing *Semich v. State*, 234 Ga. App. 89, 91 (b) (506 SE2d 216) (1998). Accord *Veal*, supra at 49. See also *State v. Diamond*, 223 Ga. App. 164, 166 (477 SE2d 320) (1996) (" 'weaving' may serve as sufficient reason to warrant an investigative stop for a possible DUI violation") (citations and footnote omitted).

[5] (Punctuation omitted.) *Diamond*, supra, citing *State v. Whitfield*, 219 Ga. App. 5, 6 (463 SE2d 728) (1995). Accord *Veal*, supra at 49.

[6] (Punctuation and footnote omitted.) *Worsham v. State*, 251 Ga. App. 774, 775 (554 SE2d 805) (2001).

[7] (Punctuation and footnote omitted.) Id.

court's statement in its order denying the motion to suppress that "it is not clear that a criminal violation occurred." In reviewing Camacho's challenge to the sufficiency of the evidence, it is our duty as an appellate court to examine the evidence of record to determine whether it was sufficient to find a defendant guilty beyond a reasonable doubt.[8] In doing so, we do not weigh the evidence or resolve issues of witness credibility but construe the evidence in a light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence.[9]

Camacho argues that the trial court could not find him guilty of failure to maintain lane after concluding in its order on the motion to suppress that it was not clear whether a criminal violation had occurred, particularly since there was no additional evidence introduced regarding the traffic violation before the trial court found Camacho guilty. Although these findings may appear inconsistent, we must point out that the trial court did not conclude definitively one way or the other that Camacho had failed to maintain his lane as that was not the issue before it at the motion to suppress hearing; the legality of the stop was the issue before the court at that juncture. As explained in Division 1, the legality of the stop did not depend upon the trial court's finding that an actual criminal violation had occurred.[10]

In the instant case, the trial court's finding that Camacho was guilty of failure to maintain lane was supported by undisputed evidence in the record that Camacho drove into the pothole and that the pothole was not located in the lane of travel. Camacho also argued that there was no fog line thus there was no lane marked for travel. However, the trial court obviously concluded that the lane was adequately marked, despite the faded fog line, and Heagerty's testimony also supported this conclusion. Accordingly, we affirm the judgment of the trial court.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED APRIL 10, 2008 —
RECONSIDERATION DENIED JUNE 20, 2008 — ▮▮▮▮▮▮▮

*McFarland & McFarland, Robert P. McFarland, Jr.*, for appellant.

---

[8] *McGee v. State*, 287 Ga. App. 460, 461 (651 SE2d 546) (2007); *Lockett v. State*, 258 Ga. App. 178, 179 (1) (573 SE2d 437) (2002).

[9] *McGee*, supra at 460-461.

[10] See *Worsham*, supra.

*Leslie C. Abernathy, Solicitor-General*, for appellee.