**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **http://www.gaappeals.us/rules**

**January 14, 2016**

# In the Court of Appeals of Georgia

A15A2035. EVANS-GLODOWSKI v. THE STATE. BO-077C

BOGGS, Judge.

Annie Evans-Glodowski appeals from her convictions of first degree homicide by vehicle, second degree homicide by vehicle, reckless driving, and failing to maintain her lane. She contends that the trial court erred by denying her motion for new trial because the evidence was insufficient to authorize her convictions and the trial court erred in granting the State's motion in limine to exclude evidence of habit. For the reasons explained below, we find no merit in these contentions and affirm.

On appeal from a criminal conviction, the defendant no longer enjoys a presumption of innocence, and the evidence must be construed in the light most favorable to support the verdict. See *Morales v. State*, 332 Ga. App. 794 (1) (775 SE2d 168) (2015). In evaluating the sufficiency of the evidence, "we do not weigh

the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt." (Citation, punctuation and footnote omitted.) *Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009). "Thus, the jury's verdict will be upheld as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case." (Citation, punctuation and footnote omitted.) *Jones v. State*, 313 Ga. App. 590, 592 (1) (722 SE2d 202) (2012).

So viewed, the evidence shows that the victim left his home to drive to Home Depot on August 5, 2009. He was subsequently killed in an automobile collision, and Evans-Glodowski was charged with and convicted of first degree homicide by vehicle, second degree homicide by vehicle, reckless driving, and failing to maintain her lane. All convictions were merged into the first degree homicide by vehicle conviction.

Charita Holman and Tresa Johnson were passengers in a vehicle in the area shortly before the accident occurred. Holman testified that Evans-Glodowski's vehicle was behind them in the left lane at a red light and then went "flying" passed them in the right lane when the light turned green, that she was already "flying" down Bypass Road by the time they reached the stop sign at Bypass Road to turn right on

2

Lower River Road, and was involved in the crash that occurred on a Lower River Road curve. Holman checked their vehicle's speed twice and estimated Evans-Glodowski's vehicle was going "at least 60" in speed limit zones of 45 miles per hour on Washington Street and 55 miles per hour on Bypass Road. Although she did not see the collision, Holman testified that Evans-Glodowski's car was in the opposite lane of traffic after the collision, and she identified a picture of Evans-Glodowski's vehicle as the car that passed them prior to the collision and as the car involved in the collision. Johnson testified that their vehicle was stopped at a red light with Evans-Glodowski's vehicle behind them. When the light changed to green, Evans-Glodowski accelerated around them and "took off down the street . . . really fast" in front of them when the two lanes merged. When their vehicle reached the stop sign at Bypass Road, Evans-Glodowski's vehicle "was just gone" due to its excessive speed. Approximately five minutes later, they came upon the accident on Lower River Road.

An individual who resides near the collision testified that the speed limit on Lower River Road in the area of the collision is 40 miles per hour, and warning signs prior to the curve indicate a 35 mile per hour speed limit at the curve where the collision occurred. The State's accident reconstruction expert determined that the

collision occurred in the northbound lane, the lane the victim was traveling in, and he estimated the speed of Evans-Glodowski's vehicle prior to braking between 60 and 66 miles per hour based on a number of factors, including a 91.88 foot skid mark left on the road by Evans-Glodowski's vehicle before colliding with the victim's vehicle in his lane of travel.

Evans-Glodowski did not testify at trial, but relied on her own accident reconstruction expert, who opined that she was traveling 54-56 miles per hour prior to braking. According to this expert, the State's expert relied on a skid mark that "could have been" a tire scuff instead.

1. Evans-Glodowski contends that the evidence presented at trial was not sufficient to support her convictions for first degree homicide by vehicle and reckless driving. Specifically, she asserts that the witnesses did not observe the collision and lost sight of the vehicle which passed them, so "they could not definitively say it was the same vehicle" involved in the collision. She also asserts that there is insufficient evidence that she was speeding. We disagree.

OCGA § 40-6-393 distinguishes between first degree and second degree vehicular homicide according to the severity of the underlying traffic offense. As we explained in *Hayles v. State*, 180 Ga. App. 860, 861 (3) (350 SE2d 793) (1986):

The act of causing the death of another by commission of a traffic violation is necessary to constitute the crime in either case. The law considers, however, that causing the death by commission of certain traffic violations is attended with more immediate and serious consequences than causing the death by commission of any other traffic offenses; and therefore it is, that a distinction is made in the punishment.

(Citation and punctuation omitted.) Under Georgia law, "[a]ny person who, without malice aforethought, causes the death of another person through the violation of subsection (a) of Code Section 40-6-163, Code Section 40-6-390 or 40-6-391, or subsection (a) of Code Section 40-6-395 commits the offense of homicide by vehicle in the first degree." OCGA § 40-6-393 (a). Evans-Glodowski was charged with first degree homicide by vehicle through a violation of OCGA § 40-6-390, reckless driving. Reckless driving occurs when a person drives a vehicle "in reckless disregard for the safety of persons or property." OCGA § 40-6-390 (a). "[S]peeding, unaccompanied by other traffic violations, can form the basis for a reckless driving conviction if the state presents evidence that a defendant was driving at an excessive rate of speed given the posted speed limit and the driving conditions existing at the time." (Puncutation, footnote and emphasis omitted.) *Fraser v. State*, 263 Ga. App.

764, 765-766 (1) (589 SE2d 329) (2003); see also *Smith v. State*, 319 Ga. App. 164, 173 (7) (a) (735 SE2d 153) (2012).

Here, although the experts' speed estimations at the time of braking varied from 54 miles per hour to 66 miles per hour, both calculations exceeded the 35 mile per hour speed limit sign posted for the curve where the collision occurred. And, Holman specifically testified that she looked at her vehicle's speedometer twice to verify that the car which sped passed them was driving at an excessive rate of speed, and she identified the car involved in the collision as the same car which sped passed them earlier. Although both she and the other witness lost sight of the vehicle because of its speed, and gave no testimony regarding Evans-Glodowski's speed upon collision, it is the province of the jury, and not this Court, to weigh the evidence and determine witness credibility, *Collins v. State*, 276 Ga. App. 358 (623 SE2d 192) (2005), and the testimony of a single witness is generally sufficient to establish a fact, OCGA § 24-14-8.

"Whether a defendant's manner of driving under the circumstances demonstrated a reckless disregard for the safety of others is a question that is reserved for the jury." (Citation omitted.) *Shy v. State*, 309 Ga. App. 274, 278 (4) (709 SE2d 869) (2011). In this case, contrary to Evans-Glodowski's argument, there was some

6

evidence – independent of the collision itself – that Evans-Glodowski drove in a reckless manner just minutes prior to the collision. See *Winston v. State*, 270 Ga. App. 664, 666 (1) (a) (607 SE2d 147) (2004). Even though this was circumstantial evidence of her manner of driving at the time of the collision, such "evidence need not exclude every inference or hypothesis except the guilt of the accused, but only reasonable inferences and hypotheses, so as to justify the inference beyond a reasonable doubt, of guilt." (Citation and punctuation omitted.) *Shy*, supra, 309 Ga. App. at 278 (4). Here, we conclude that the evidence was sufficient for the jury to infer beyond a reasonable doubt that Evans-Glodowski was driving her vehicle in a manner exhibiting a reckless disregard for the safety of others. OCGA §§ 40-6-393 (a); 40-6-390 (a); *Shadix v. State*, 179 Ga. App. 644, 645 (3) (347 SE2d 298) (1986).

2. Evans-Glodowski also asserts that the evidence presented at trial was not sufficient to support her convictions for second degree homicide by vehicle through a violation of OCGA § 40-6-48, failure to maintain lane.[1] In support of this contention, she argues,

---

[1] Under Georgia law, "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." OCGA § 40-6-48 (1).

7

> The evidence as to these charges was taken from the location of the vehicles and other observances made after the traffic accident. None of the witnesses testified to observing the Appellant cross over into the other lane of traffic, and there were differences of opinion among the witnesses as to things photographed, such as skid marks versus tire scuffs, leaving in question the validity of the conclusions drawn from the evidence gathered at the scene.

However, the fact that the evidence may be circumstantial "makes it no less powerful when the circumstances proved lead directly to the conclusion" that Evans-Glodowski failed to maintain her lane. *Green v. State*, 244 Ga. App. 565, 566 (1) (536 SE2d 240) (2000). The evidence is undisputed that the collision occurred outside Evans-Glodowski's lane of travel, and no alternative explanation for the collision arises from the evidence. We conclude the evidence was sufficient for the jury to find beyond a reasonable doubt that Evans-Glodowski failed to maintain her lane of travel and, therefore, was guilty of second degree homicide by vehicle. OCGA §§40-6-393 (c), 40-6-48 (1); *Camacho v. State*, 292 Ga. App. 120, 123 (2) (663 SE2d 364) (2008) (evidence that defendant drove into pothole outside lane of travel sufficient to sustain conviction for failing to maintain lane).

3. Evans-Glodowski argues that the trial court erred in granting the State's motion in limine to exclude habit testimony. The record shows that the State filed a motion in limine to exclude anticipated testimony of Evans-Glodowski's method of

8

driving. Evans-Glodowski made a proffer at trial that two family members who have been passengers in her car for a number of years were available to testify regarding her habit of driving around the particular curve involved in this case. The trial court found that such testimony was prejudicial and granted the State's motion in limine.

"As a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." (Citation and punctuation omitted.) *Dailey v. State*, 287 Ga. App. 706, 707 (1) (652 SE2d 599) (2007). In reviewing the grant or denial of a motion in limine, "this Court must construe the evidence most favorably to the upholding of the trial court's findings and judgment, and we cannot reverse a trial court's ruling absent an abuse of discretion." (Citation, punctuation, and footnote omitted.) *Brown v. State*, 316 Ga. App. 137, 139 (1) (728 SE2d 778) (2012). We find no such abuse here.

Because this case was tried after January 1, 2013, OCGA § 24-4-406 governs the use of habit evidence. According to that statute,

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with such habit or routine practice.

The State argues, and we agree, that the testimony sought to be excluded was not habit evidence.

Neither this Court nor the Supreme Court have addressed OCGA § 24-4-406, but the Georgia General Assembly noted its intent to adopt the Federal Rules of Evidence: "It is the intent of the General Assembly to revise, modernize, and reenact the general laws of this state relating to evidence while adopting, in large measure, the Federal Rules of Evidence." House Bill No. 24, Ga. L. 2011, p.1, § 1. Thus, courts of this State have been encouraged to consider, in addition to United States Supreme Court decisions, decisions of the 11th Circuit Court of Appeals where conflicts exist among the various circuit courts, to interpret our new evidence statutes. Id.

With this in mind, we turn to federal law regarding habit evidence. OCGA § 24-4-406 closely tracks Federal Rule of Evidence 406, which provides:

> Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

According to federal law, habit "describes one's regular response to a repeated specific situation. . . . [T]he offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a

10

given manner, but rather, conduct that is 'semi-automatic' in nature." (Citations and punctuation omitted.) *Thompson v. Boggs*, 33 F.3d 847, 854 (III) (C) (1) (7th Cir. 1994). The conduct must occur so often that it "permits an inference of systematic conduct." (Citation and punctuation omitted.) *United States v. Aguirre*, 368 Fed. Appx. 979, 990 (IV) (11th Cir. 2010).

In distinguishing inadmissible character evidence from admissible habit evidence, the 11th Circuit noted:

> Character and habit are close akin. Character is a generalized description of one's disposition, or one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness. 'Habit,' in modern usage, both lay and psychological, is more specific. It describes one's regular response to a repeated specific situation. If we speak of character for care, we think of the person's tendency to act prudently in all the varying situations of life, in business, in family life, in handling automobiles, and in walking across the street. A habit, on the other hand, is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or giving the hand signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic.

(Citations and punctuation omitted.) *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1524 (11th Cir. 1985). "The federal courts generally have construed 'habit' narrowly, requiring that the conduct be almost automatic, a stimulus-response situation, and that the conduct be highly particularized and not involve general or

11

complex behaviors such as drunkenness or reckless driving." Paul S. Milich, Georgia Rules of Evidence, §11:8, p. 287-288 n. 6 (2014-2015 ed).

Here, the State sought to exclude anticipated testimony regarding how Evans-Glodowski often drove on the curve where the deadly collision occurred. Such conduct is not the particular type of conduct that OCGA § 24-4-406 contemplates. How an individual drives, even on a specific curve, is subject to countless variables each time an individual faces the situation: whether the road is wet or dry, whether it is night or day, whether the driver is following another vehicle or driving with an open road, whether the driver is the sole occupant or carting passengers, whether the driver is running late or early, or whether the driver is preoccupied, happy or sad, just to name a few. Simply put, testimony that Evans-Glodowski drove in a certain manner around this particular curve on previous occasions is not evidence of habit. Thus, the trial court correctly excluded testimony that Evans-Glodowski was a prudent person who exercised due care on previous occasions.

This interpretation is also consistent with cases decided under former OCGA § 24-2-2, which discussed the inadmissibility of character evidence. Pursuant to that former law, "[t]he general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such

12

character and renders necessary or proper the investigation of such conduct." Former OCGA § 24-2-2. In interpreting that statute, we held that evidence of frequently engaged in conduct will not rise to the level of habit unless it is of a nature that is fixed and uniform. See *Battle v. Kovalski*, 202 Ga. App. 471, 472 (2) (414 SE2d 700) (1992). In addition, "it has been held for many years that a person's habit of using or failing to use due care in performing a particular task is not admissible to prove that he did or did not act negligently on a particular occasion." *Sams v. Gay*, 161 Ga. App. 31, 32-33 (1) (288 SE2d 822) (1982); see also *Leo v. Williams*, 207 Ga. App. 321, 323 (428 SE2d 108) (1993) (trial court erred in permitting evidence of previous traffic violations to show habit of driving recklessly).

The trial court did not abuse its discretion in granting the State's motion in limine to exclude testimony that, on prior occasions, Evans-Glodowski exercised care when driving around the curve where the collision occurred.

*Judgment affirmed. Doyle, C. J. and Phipps, P. J., concur*.