**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 26, 2017**

# In the Court of Appeals of Georgia

A17A1045. TURNER v. THE STATE.

BARNES, Presiding Judge.

Brehonna Nicole Turner was indicted for one count of malice murder, two counts of felony murder, and two counts of aggravated assault. Following her trial, a Douglas County jury found her guilty of the lesser included offense of first degree homicide by vehicle as to the three murder counts, and not guilty of the two aggravated assault counts. Turner filed a motion for new trial, which she later amended, and alleged that the evidence was insufficient and that the trial court erred by failing to give her requested charge on the lesser included offense of second degree vehicular homicide for failure to maintain a lane. The trial court denied the motion for new trial, and Turner now appeals. Following our review, we affirm.

On appeal from a criminal conviction, the defendant no longer enjoys a presumption of innocence, and the evidence must be construed in the light most favorable to support the verdict. In evaluating the sufficiency of the evidence, we do not weigh the evidence or determine

witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. Thus, the jury's verdict will be upheld as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.

(Citations and punctuation omitted.) *Evans-Glodowski v. State*, 335 Ga. App. 484, 484-485 (781 SE2d 591) (2016).

So viewed, the evidence demonstrates that for approximately two years, Turner was involved in a continuing dispute with Kimberly Kelley about Kelley's involvement with Tacayor Felder, the father of Turner's children. The two women verbally sparred on their social media accounts, and during the days leading up to the homicide, Turner also made numerous harassing telephone calls to Kelley. On January 31, 2014, the day of the incident, Turner drove to Kelley's residence to confront her and Felder, but left and came back later with a friend. Kelley, Felder, the victim, who was Kelley's cousin, and the victim's boyfriend were among the people present inside Kelley's residence. When Turner returned to the residence for the second time, Felder approached the car and the two engaged in a verbal and physical altercation, which ended when Turner sprayed Felder with mace. Turner drove toward the subdivision exit, then turned around and drove back down the street toward where

2

Kelley and the victim were standing. She bumped Kelley on her leg with the car, then turned around in the cul-de-sac, and drove back at a high rate of speed toward Kelley. As she drove in that direction, Turner ran over the victim, pinning her beneath the car, causing the victim's death.

In a statement to police, Turner said that she went to the subdivision to confront Kelley because she was tired of being disrespected, and that while she was there, Felder reached into her car and hit her, and that she sprayed him with pepper spray. Turner said that the friend who was with her in the car said to leave but that, "I was just so blacked out and so mad that I turned back around and I was just driving all over the place and I made a mistake and ran somebody over." She also stated that although, after initially driving off and being advised by her friend to not go back, she "went back anyway," and that "something just came over [her]". Turner said she was in a "fit of fury" and was driving "like a bat out of hell."

1. Turner first contends that the evidence was insufficient to sustain her conviction for first degree vehicular homicide because she did not commit the predicate offense of reckless driving. Turner contends that the evidence instead demonstrated that her car "accidentally wound up partially on top of the victim." At

3

trial, Turner put forth the affirmative defense of accident and maintained that the victim's death was caused by her inability to see because the car was full of mace.

> Under Georgia law, any person who, without malice aforethought, causes the death of another person through the violation of subsection (a) of Code Section 40-6-163, Code Section 40-6-390 or 40-6-391, or subsection (a) of Code Section 40-6-395 commits the offense of homicide by vehicle in the first degree. OCGA § 40-6-393 (a). [Turner] was [convicted of] first degree homicide by vehicle through a violation of OCGA § 40-6-390, reckless driving. Reckless driving occurs when a person drives a vehicle "in reckless disregard for the safety of persons or property." OCGA § 40-6-390 (a).

(Punctuation omitted.) *Evans-Glodowski v. State*, 335 Ga. App. at 486 (1).

Although Kelley maintains that the evidence was insufficient to demonstrate reckless conduct, "whether a defendant's manner of driving under the circumstances demonstrated a reckless disregard for the safety of others is a question that is reserved for the jury." *Shy v. State*, 309 Ga. App. 274, 278 (4) (709 SE2d 869) (2011). Here, given the evidence of Turner's animosity and threats toward Kelley, eyewitness testimony about Kelley's manner of driving, Kelley's statements to police that she was driving in a "fit of fury," and "like a bat out of hell," the evidence was sufficient

4

for the jury to find beyond a reasonable doubt that Turner was guilty of first degree vehicular homicide.

2. Turner next contends that the trial court erred in not giving her requested charge on homicide by vehicle in the second degree based on failure to maintain a lane. Turner maintains that she was not driving in a reckless manner, but had only failed to maintain her lane, which then resulted in the death of the victim. Thus, according to Turner, the facts justified a lesser included charge of homicide by vehicle in the second degree, and the trial court's failure to so charge constituted plain legal error. We do not agree.

"OCGA § 40-6-393 distinguishes between first degree and second degree vehicular homicide according to the severity of the underlying traffic offense." *Otuwa v. State*, 319 Ga. App. 339, 341 (2) (734 SE2d 273) (2012). As previously noted, under OCGA § 40-6-393 (a), first degree vehicular homicide is defined as causing the death of another person through the violation of certain specified traffic laws, including, as was found in this case, reckless driving. Whereas, in circumstances of second degree vehicular homicide, the cause of the death is by violating any Title 40 traffic law not referenced in OCGA § 40-6-393 (a), such as speeding or, as Turner claims, failure to maintain a lane. See OCGA § 40-6-393 (c). Because the difference

between first and second degree vehicular homicide is the predicate traffic offense, second degree vehicular homicide is considered a lesser included offense of first degree vehicular homicide. *Hayles v. State*, 180 Ga. App. 860, 861 (3) (350 SE2d 793) (1986).

> [W]ith regard to giving a defendant's requested charge on a lesser included offense[,]. . . .where the state's evidence establishes all of the elements of an offense and there is no evidence raising the lesser offense, there is no error in failing to give a charge on the lesser offense. Where a case contains some evidence, no matter how slight, that shows that the defendant committed a lesser offense, then the court should charge the jury on that offense.

(Footnote omitted.) *Wright v. State*, 319 Ga. App. 723, 732 (4) (738 SE2d 310) (2013). Thus, a written request to instruct the jury on second degree vehicular homicide must be given in a case charging first degree vehicular homicide if there is any evidence showing that a less culpable traffic offense caused the fatal collision. *Hayles*, 180 Ga. App. at 861-862 (3).

Turner acknowledges that she did not provide a written request to charge on vehicular homicide in the second degree for failure to maintain a lane, but instead had requested a charge of vehicular homicide in the second degree for speeding. However, at the charge conference, Turner orally requested that the charge be

6

changed to reflect the predicate offense of "failure to maintain the roadway and yield to the person standing in the roadway," rather than speeding. The trial court denied the request, and, at the conclusion of the trial court's jury charge, Turner excepted to the charge as given, including the trial court's failure to charge "homicide by vehicle in the second degree, with regard to failure to exercise due care under OCGA § 40-6-93."

We note first that generally, " [a] trial judge never errs in failing to instruct the jury on a lesser included offense where there is no written request to so charge. [And,] [a]n oral request to charge does not alter this mandate." (Citations and punctuation omitted.) *McMurtry v. State*, 338 Ga. App. 622, 625 (3) (291 SE2d 196) (2016). Turner submitted a written charge for second degree vehicular homicide for speeding, not failure to maintain a lane, which is a separate offense. Nonetheless,

> OCGA § 5-5-24 (c) provides that "the appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made . . . or not." Moreover, it is the duty of the judge, with or without request, to give the jury an appropriate instruction on each substantive point of issue involved in a case so as to enable the jury to judiciously decide the guilt or innocence of a defendant.

7

(Citation and punctuation omitted.) *Williams v. State*, 252 Ga. App. 280, 280 (556 SE2d 170) (2001).

Here, however, there was no evidentiary support for the charge of second degree vehicular homicide for committing a traffic violation less culpable than reckless driving, specifically, as Turner maintains, failure to maintain a lane. While certainly, Turner ultimately failed to maintain control of the car in a designated roadway, because the victim was killed in the driveway of a home in the subdivision, the evidence does not support her contention that this less culpable offense caused the victim's death. Compare *Hayles*, 180 Ga. App. at 861 (3) (where some evidence showed that the defendant "committed an act of following too closely, a traffic violation 'other than' the more culpable offense of DUI," and that the act may have caused the collision and resulting death, the fact that the defendant may have also committed a DUI did not "demand a finding that the DUI was the sole proximate cause of the collision and of the victim's death." )

Here, the evidence, including Turner's own statements to police that she was driving in a "fit of fury," and "like a bat out of hell," her admission that she had driven despite being blinded by mace, and the eyewitness testimony that Turner had purposefully driven in the direction of Kelley and the victim did not support a charge

8

of second degree vehicular homicide for failure to maintain a lane, and the trial court did not err in refusing to so charge. *Watkins v. State*, 336 Ga. App. 145, 149 (3) (784 SE2d 11) (2016). ("It is axiomatic that a requested charge . . . be authorized by the evidence. If any portion of the request to charge fails in this requirement[], denial of the request is proper.") (citations and punctuation omitted.)

*Judgment affirmed. Mercier, J., concurs. McMillian, J., concurs fully to Division 1, and in judgment only as to Division 2.*