**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 18, 2022**

# In the Court of Appeals of Georgia

A21A1378. MILES v. THE STATE.

BROWN, Judge.

A jury found Rodney Miles guilty of cruelty to children in the first degree and battery (family violence) for striking his girlfriend and two-year-old daughter during a domestic dispute. Miles appeals from his convictions and the denial of his amended motion for new trial, challenging the trial court's jury charge. For the reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial showed that the victim and Miles had been in relationship for eight years and had three children together. Miles had a history of physically and verbally abusing and threatening the victim, including one incident when he pushed the victim while she was pregnant and then fired a gun into the ceiling. The charges in this case arose out of an incident in September 2018, when the victim and Miles got into an argument at their

home and Miles repeatedly punched the victim while she was holding the couple's two-year-old daughter. The victim suffered injuries to her lip and required braces to repair loose teeth. The child suffered a laceration to her eye. Both the victim and the child were taken to the hospital for treatment. A DFCS investigative case manager who visited the victim and child in the hospital testified that the victim told her that Miles hit her just as she picked up the child after changing her.

A Richmond County Sheriff's officer who was the first to arrive on the scene testified that when he met Miles outside the home and asked him what was going on, Miles responded, "just a little domestic violence." When the officer went inside the home, he observed the injured victim and the child, who appeared very "fatigued, sleepy" and had a laceration under her eye. The victim told the officer that Miles "struck her in the face multiple times while she was holding [the child], and also struck [the child]" and that Miles punched her really hard, "like a man." When the officer spoke to Miles again, he stated that the victim had attacked him first and that he hit her one time. After the officer arrested Miles, he noticed lacerations on his knuckles consistent with someone having punched another person.

A body-cam video of the officer's interaction with Miles and the victim was played for the jury. During that video, the victim told the officer that she had just

"picked up [her] baby . . . and [Miles] started punching on [the victim] while [she] was holding [her] baby." The victim then told the officer that the child suffered a cut to her eye because Miles hit the child while the victim was holding her. On the video, the victim tells the officer that Miles hit her at least six times in the face and that she was "trying to cover [her] baby['s] face." The victim repeatedly states to the officer that Miles did not have "to hit [her] while [she] was holding [her] baby." In a statement taken by police the night of the beating, the victim wrote that Miles struck her in the face while she was holding the child.

Months later, the victim changed her story and stated that a neighbor grabbed the child from the victim and was holding the child during the beating. At trial, the victim stated that she believes the child was injured because the neighbor was standing too close and trying to break up the fight. The victim testified that she did not remember parts of the attack "[b]ecause [she] ha[s] seizures and flashbacks, and that's why [she thought her] daughter was beaten that day." She also testified during trial that she did not remember "how things happened that day," but that she "honestly" thought that the child had been bitten. At one point during her testimony, the victim testified that she did not tell the officer about the bite mark and did not see how it occurred, but then she later stated that she "was trying to get away from [Miles and] that's how [she]

3

bit [the child]." During a telephone call Miles made from jail, he questions the victim as to why she told police that he "punched the baby." When asked if she was still in a relationship with Miles, the victim testified that she still loves him and that she is "waiting on him to get counseling."

Miles testified in his own defense and admitted that he was acting aggressively and that he hit the victim in the face at least three times, "[m]aybe more," but denied hitting the child, claiming that the victim was not holding the child when Miles punched the victim: "I'm being charged with striking my child in the face. That did not happen, because she wasn't in [the victim's] arms." According to Miles, a neighbor had grabbed the child from the victim's arms when she heard Miles and the victim arguing. As for the injury to the child, Miles acknowledged that the child had blood around her eye, but he believed that the child had been bitten and had "teeth marks" around her eye, not a "scratch" from being punched. Miles testified that the bite happened during the altercation, but that he does not know who bit the child. He further testified that if he had punched the child, her face would have been fractured, bruised, or swollen.

1. Miles contends that the trial court committed plain error by failing to charge the jury on the lesser-included offenses of cruelty to children in the second degree and

4

reckless conduct as lesser-included offenses of cruelty to children in the first degree.[1]

We disagree.

At the outset, we note that Miles did not request charges on these two lesser included offenses in his written requests and did not object to the trial court's failure

---

[1] As established by the Georgia Supreme Court in *State v. Kelly*, 290 Ga. 29 (718 SE2d 232) (2011), and set forth in OCGA § 17-8-58 (b), a plain error analysis applies to the failure to object to any portion of the charge. The issue in *Kelly* was as follows: When is an appellate court required to engage in a plain error analysis of unobjected-to jury charges being challenged on appeal. Id. at 31 (1). The Court then went on to hold that "under OCGA § 17-5-58 (b), appellate review for plain error is required whenever an appealing party properly asserts an error in jury instruction," and overruled a number of cases where there was no objection. Id. at 32 (1). As set out in *Kelly*, the elements of plain error review are follows:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation, punctuation, and emphasis omitted.) 290 Ga. at 33 (2) (a).

to give the charges.[2] While Miles asserts that plain error applies to our analysis of whether a *trial court errs in failing to sua sponte give a charge on a lesser included offense*, the law is less clear. Indeed, there appear to be three parallel lines of authority that have been established in this area. Under the line established by *State v. Stonaker*, 236 Ga. 1, 2 (2) (222 SE2d 354) (1976), "[a] trial judge never errs in failing to instruct the jury on a lesser included offense where there is no written request to so charge." (Citation and punctuation omitted.) *Martin v. State*, 349 Ga. App. 656, 659 (2) (825 SE2d 227) (2019). See also *Brown v. State*, 285 Ga. 324, 327 (3) (676 SE2d 221) (2009); *Harris v. State*, 274 Ga. 422, 425 (4) (554 SE2d 458) (2001) ("[w]hile a trial court may charge on a lesser included offense on its own motion, the failure to do so, without a written request is not error") (punctuation omitted), citing *Stonaker*, 236 Ga. at 2 (2); *Mosley v. State*, 257 Ga. 382, 383 (2) (359 SE2d 653) (1987); *Chadwick v. State*, ___ Ga. App. ___ *5 (3) (861 SE2d 612); *McMurtry v. State*, 338 Ga. App. 622, 625 (3) (791 SE2d 196) (2016). As Justice Hill explained in his special concurrence

---

[2] In this case, the State requested the lesser included charge of cruelty to children in the second degree in its written requests; however, since the charge conference was not transcribed, there is no evidence that Miles joined in this request, and, on appeal, Miles "does not argue that the State's request for such an instruction is sufficient to preserve or create error." *Wade v. State*, 304 Ga. 5, 13 (6), n.4 (815 SE2d 875) (2018).

6

in *Stonaker*, the purpose of this holding is to prevent a defendant from inducing an asserted error, sit silently hoping for an acquittal, and obtain a new trial when that strategy fails:

> Under the prior rule (that the trial judge was required to charge, without request, the law applicable to lesser included offenses, where the evidence would have authorized conviction on a lesser offense), the defendant was permitted to defend his first trial as stated above, and get a new trial because the trial judge failed to charge, without request, the lesser included offense. That is to say, a defendant accused of an offense, as to which there was a lesser included offense as shown by the evidence, was virtually assured of a second trial if he could avoid referring to the lesser offense at his first trial and if the trial judge only charged the jury according to the defendant's announced theory of defense.

236 Ga. at 4 (Hill, J. concurring specially).

In yet another line of cases — developed before the enactment of OCGA § 17-8-58 in 2007 — our appellate courts apply a standard originating with Code Ann. § 70-207, the predecessor statute to OCGA § 5-5-24 (c) ("[n]otwithstanding any other provision of this Code section, the appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not"). See *Yarn v. State*, 265 Ga. 787 (1) (462 SE2d 359) (1995) (noting "long-standing rule that

it is error for the trial court to fail to give an appropriate charge on circumstantial evidence . . . because the omission of the charge fails to provide the jury with the proper guidelines for determining guilt or innocence"). See also *Kitchen v. State*, 263 Ga. 629, 630 (1) (436 SE2d 645) (1993); *Spear v. State*, 230 Ga. 74, 76 (1) (195 SE2d 397) (1973). When analyzing harm under this statute, Georgia courts must determine whether the "omission [of a charge] is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence." *Spear*, 230 Ga. at 75 (1).

In *Brown*, a case tried before enactment of OCGA § 17-8-58, the Supreme Court of Georgia addressed an argument that the defendant was entitled to a new trial based upon the trial court's failure to charge on a lesser included offense, even though it had not been requested in writing as required by *Stonaker*. See *Brown*, 285 Ga. at 327 (3). The defendant relied upon the line of cases developed under former § 70-207 to assert that "the omission of a charge on voluntary manslaughter, when supported by the evidence, is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence." (Citation and punctuation omitted.) Id. The Supreme Court rejected this argument, stating:

8

> [T]his language refers to a rare exception to *Stonaker* . . . and to excuse the requirement for a written request whenever the evidence supports a charge on voluntary manslaughter, as [defendant] urges, would constitute an unwarranted and extreme departure from the very well-settled rules set forth in *Stonaker*.

Id. See also *Seay v. State*, 276 Ga. 139, 140 (2) (576 SE2d 839) (2003) (trial court not authorized to give charge on lesser included offense of involuntary manslaughter), citing *Camphor v. State*, 272 Ga. 408, 414 (6) (b) (529 SE2d 121) (2000) (omission of unrequested charge that a defendant's prior consistent statement could be considered as substantive evidence of his innocence not clearly harmful as a matter of law); *Turner v. State*, 342 Ga. App. 882, 886 (2) (805 SE2d 624) (2017) (physical precedent only) (failure to give unrequested charge of second degree vehicular homicide for failure to maintain lane not harmful as a matter of law where evidence did not support such a charge).

Finally, in the third line of cases — and following the enactment of OCGA § 17-8-58 — numerous cases have analyzed the issue under the plain error standard of review. See *McIntyre v. State*, ___ Ga. ___ (2) (Case No. S21A1146, decided September 21, 2021); *Hood v. State*, 303 Ga. 420, 427-428 (3) (811 SE2d 392) (2018); *Reaves v. State*, 292 Ga. 545, 549 (3) (739 SE2d 368) (2013); *Boccia v. State*, 335 Ga.

App. 687, 691 (1) (a) (i) (782 SE2d 792) (2016) (physical precedent only); *Styles v. State*, 329 Ga. App. 143, 149-150 (2) (a) (764 SE2d 166) (2014); *Anthony v. State*, 317 Ga. App. 807, 811-812 (3) (732 SE2d 845) (2012). See also *Ingram v. State*, 317 Ga. App. 606, 607 (1) (732 SE2d 456) (2012) (applying rule in *Stonaker* and plain error "to the extent we are required to evaluate . . . plain error"). Of note is the following footnote in *Kelly*: "Prior to the enactment of OCGA § 17-8-58, OCGA § 5-5-24 (c) was the exclusive avenue in all cases for appellate review of jury instruction errors that had been waived (an infrequent occurrence in criminal cases pre-OCGA § 17-8-58, given the ease with which exceptions could be reserved)." 290 Ga. at 32 (1), n.3.

In sum, we have cases after the enactment of OCGA § 17-8-58 and following the *Kelly* decision analyzing the issue in each of the three ways. See *Hood v. State*, 303 Ga. at 427-428 (3) (applying plain error only); *Martin*, 349 Ga. App. at 659 (2) (applying rule of *Stonaker*); *Turner*, 342 Ga. App. at 886 (2) (applying OCGA § 5-5-24 (c) and acknowledging rule of *Stonaker*); And, in some jury-charge cases decided before the seminal decision in *Kelly* — none of which concern the failure to charge a lesser included offense — this Court applied both OCGA § 5-5-24 and OCGA § 17-8-58. See *Tidwell v. State*, 312 Ga. App. 468, 474 (4) (718 SE2d 808) (2011) (addressing whether trial court erred in its recharge of jury which omitted corroboration

10

requirement and which defendant failed to object to); *Wagner v. State*, 311 Ga. App. 589, 592 (2) (716 SE2d 633) (2011) (physical precedent only) (addressing improper — but unobjected to — instruction on inference that could be drawn from refusal to take breath test). Our research has not revealed a Supreme Court of Georgia decision doing so. Pretermitting the confusion created by these parallel lines of cases, the rules governing judicial precedent mandate that we analyze the issue under the plain error standard of review of *Kelly* rather than the simplified no error approach of *Stonaker*. See *White v. State*, 305 Ga. 111, 122, n.10 (823 SE2d 794) (2019) ("[w]hen a high court finds discordant opinions among its own precedents the court generally follows its decision in the most *recent* case, which must have tacitly overruled any truly inconsistent holding") (citation and punctuation omitted; emphasis in original). This does not mean, however, that we cannot look to *Stonaker* to determine whether there was a clear or obvious error that substantially affected the outcome of the proceedings. See *Kelly*, 290 Ga. at 33 (2) (a).

Turning to the case now before us, we conclude that since a trial court never errs in failing to instruct the jury on a lesser-included offense where there is no written request to so charge, there was no reversible error. And, where "there was no reversible error, . . . it follows that there could be no plain error either (since plain error

11

does not exist in the absence of reversible error)." (Citation and punctuation omitted.) *Dolphy v. State*, 288 Ga. 705, 710 (3) (707 SE2d 56) (2011). Cf. *Hood*, 303 Ga. at 427-428 (3); *Reaves*, 292 Ga. at 549 (3). To the extent an analysis under OCGA § 5-5-24 (c) is also required, we conclude that the jury was provided proper guidelines for determining guilt or innocence and that no harm occurred as a matter of law as a result of the trial court's failure to charge on the lesser-included offenses of cruelty to children in the second degree and reckless conduct.

2. Miles contends that the trial court committed plain error by failing to charge the jury on the offense of battery as a lesser-included offense of cruelty to children in the first degree. Miles submitted a written request for a battery charge, but stated no objection to the trial court's alleged refusal to give the charge. We disagree that the trial court erred in failing to charge on battery.

OCGA § 16-5-70 (b) provides that "[a]ny person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." The crime of battery is committed when a person "[i]ntentionally causes substantial physical harm or visible bodily harm to another." OCGA § 16-5-23 (a). Miles contends that this case is identical to *Dinkler v. State*, 305 Ga. App. 444 (699 SE2d 541) (2010), overruled on

12

other grounds, *Stuart v. State*, 318 Ga. App. 839, 842-843 (3) (734 SE2d 814) (2012), where this Court concluded that the trial court erred in refusing to give the defendant's written request to charge the jury on battery as a lesser-included offense of cruelty to children in the first degree. Id. at 449 (1). But, Miles disregards footnote 6 of that case, where this Court observed that such a charge is not authorized in cases where "the defendant either denied the commission of the offenses or argued that the injuries sustained by the children were accidentally caused." Id. at 449 (1), n.6. See *Smith v. State*, 261 Ga. App. 106 (581 SE2d 713) (2003) (affirming trial court's refusal to charge the jury on the offense of simple battery as a lesser-included offense of the offense of child cruelty in the first degree because the defendant denied that he ever struck the child, claiming that the child's injuries were caused when he fell). See also *Watkins v. State*, 336 Ga. App. 145, 150 (3) (c) (784 SE2d 11) (2016). A similar result is proper here where Miles denied striking the child, testifying that the victim was not even holding the child when he repeatedly punched the victim and that the laceration under the child's eye was the result of having been bitten by an unknown person.[3] See

_____

[3] Miles' claim in his reply brief that he admitted to causing the child's injuries is a mischaracterization of his testimony. Although Miles testified on cross-examination that the child was injured because of his actions, Miles later clarified on redirect that he hit the victim and that he was responsible for the escalation of the

13

*Allen v. State*, 247 Ga. App. 10, 16 (4) (a) (543 SE2d 45) (2000) (affirming trial court's refusal to instruct the jury on battery as a lesser-included offense of cruelty to children in the first degree where the evidence showed that defendant either committed the crime charged or no crime at all). Accordingly, there is no plain error. See *Thomas v. State*, 297 Ga. 750, 754 (3) (778 SE2d 168) (2015). Nor do we find that there was a substantial error harmful as a matter of law. See OCGA § 5-5-24 (c).

3. Miles contends that the trial court plainly erred in failing to recharge the jury on cruelty to children in the first degree and malice "when requested." During deliberations, the jury posed several questions. The jury first asked if Count 1 specifically involved Miles hitting the child and then asked if they could get a copy of the victim's sworn statement.[4] In response, the trial court reread the indictment as to Count 1, and then recharged the jury on the definition of a crime, intent, no presumption of criminal intent, transferred intent, malice, and cruelty to children in the

___

situation or "the environment," but he categorically denied hitting the child, and specifically testified that he "did not touch her at all." Miles claimed that the mark on the child's face "ha[d] to be a bite mark" and that she was bitten by an unknown person during the altercation and that the injury "had to have occurred when [the neighbor] was breaking up the fight."

[4] Count 1 charged that Miles "did maliciously cause [the child] cruel and excessive physical and mental pain by striking the child about the head."

14

first degree. The jury subsequently informed the trial court that it was split on Count 1 and asked for a copy of the jury charges. In response, the trial court advised the jury as follows:

> The [c]ourt will provide to you at any time, upon request, additional instructions or clarifications of instructions on any or all of the legal concepts covered by the original charges/instructions. You need only make a specific request (such as you did earlier). Any such further instruction must be delivered to you in the courtroom, as was done earlier.

When the jury next asked the trial court to "clarify intent," the court recharged on intent, no presumption of criminal intent, presumptions and inferences, and transferred intent. In a discussion with counsel before giving its recharge, the trial court specifically noted that the jury did not ask for a recharge on cruelty to children, but that the trial court was going to give a recharge on transferred intent. Because Miles did not object to the recharge, he is correct that we review this claim for plain error. See *Rainwater v. State*, 300 Ga. 800, 805 (4) (797 SE2d 889) (2017).

At the outset, we note that in response to the jury's first question — posed about one hour before it asked to "clarify intent" — the trial court *specifically recharged the jury on cruelty to children in the first degree and malice*. Pretermitting the fact that the

15

jury asked the trial court only to "clarify intent" and did not ask to be recharged on cruelty to children in the first degree and malice (recharges that had been given just an hour prior), Miles contends that the trial court should have recharged the jury on those concepts because the jury's numerous questions show that it was "desperately confus[ed]."

"[O]ur case law contains no general mandate requiring the trial courts, when responding to a jury's request for a recharge on a particular issue, to also recharge on all principles asserted in connection with that issue." (Citation and punctuation omitted.) *Salahuddin v. State*, 277 Ga. 561, 564 (4) (592 SE2d 410) (2004). Further, "where the jury requests further instructions upon a particular phase of the case, the court in its discretion may recharge them in full, *or only upon the point or points requested*." (Citation and punctuation omitted; emphasis in original.) *Duffie v. State*, 273 Ga. 314, 316 (2) (540 SE2d 194) (2001). "When, as here, a jury has been fully instructed on the applicable law but subsequently seeks clarification on a particular point, the trial court may exercise its discretion in recharging the jury in full or confining its recharge to the jury's inquiry." *Pierce v. State*, 255 Ga. App. 194, 196 (3) (564 SE2d 790) (2002). See also *Anderson v. State*, 278 Ga. 421, 422 (3) (603 SE2d

16

220) (2004). "As a general rule, in doing so, the trial court is not obligated to repeat all the law favorable to the defendant." *Pierce*, 255 Ga. App. at 196-197 (3).

In this case, the jury specifically requested a clarification on intent and the trial court inferred from this question that the jury was confused as to whether it could find Miles guilty of hurting the child as a result of the unlawful act committed against the victim and it recharged the jury accordingly. See *Happoldt v. State*, 267 Ga. 126, 127 (1) (b) (475 SE2d 627) (1996) ("[u]nder the doctrine of transferred intent, when an unintended victim is struck down as a result of an unlawful act actually directed against someone else, the law prevents the actor from taking advantage of his own wrong and transfers the original intent from the one against whom it was directed to the one who actually suffered from it") (citation and punctuation omitted). Given Miles' admissions and categorical denials at trial, as well as the fact that the trial court had just moments before recharged the jury on the concepts Miles is now asserting should have been recharged yet again, we cannot say that the trial court abused its discretion in recharging the jury on its specific request. "Accordingly, [Miles] does not show any error, let alone plain error, from the recharge given." *Jackson v. State*, 306 Ga. 475, 479 (3) (831 SE2d 755) (2019). Nor do we find that there was a substantial error harmful as a matter of law. See OCGA § 5-5-24 (c); *Tidwell*, 312 Ga. App. at 474 (4).

4. Finally, Miles contends that the charging errors cumulatively prejudiced him, resulting in an unfair trial. "To establish cumulative error[, Miles] must show that (1) at least two errors were committed in the course of the trial; [and] (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied [Miles] a fundamentally fair trial." *Flood v. State*, ___ Ga. ___ (2) (d) (860 SE2d 731) (2021), citing *State v. Lane*, 308 Ga. 10, 21 (4) (838 SE2d 808) (2020). "[W]hen reviewing a claim of cumulative prejudice, we evaluate only the effects of matters determined to be error rather than the cumulative effect of non-errors." (Citation and punctuation omitted.) *Flood*, ___ Ga. at (2) (d). Because Miles has failed to show any error, he has likewise failed to show cumulative error. See *Green v. State*, 358 Ga. App. 843, 855 (8) (856 SE2d 427) (2021); *Crider v. State*, 356 Ga. App. 36, 50 (4) (846 SE2d 205) (2020). For the above-stated reasons, we affirm Miles' convictions.

*Judgment affirmed. Reese, J., concurs. Doyle, P. J., concurs fully in Divisions 2, 3, and 4 and in judgment only as to Division 1.*